UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVE RIVERS,<br><br>        Plaintiff,<br><br>    v.<br><br>AUDREY KING, et al.,<br><br>        Defendants. | Case No.: 1:15-cv-00276-BAM (PC)<br><br>SCREENING ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND<br>(ECF No. 1)<br><br>THIRTY-DAY DEADLINE |

    Plaintiff Steve Rivers is a civil detainee proceeding pro se and in forma pauperis in this civil rights action. Plaintiff's complaint, filed on February 23, 2015, is currently before the Court for screening.

**I.    Screening Requirement and Standard**

    "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that ... the action or appeal ... fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

    A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). While factual allegations are accepted as true, legal conclusions are not. *Id.*

## II. Allegations in Complaint

Plaintiff is a civil detainee currently housed at Coalinga State Hospital (CSH). Plaintiff names the following defendants: (1) Audrey King, Executive Director of CSH; (2) Jagsir Sandhu, M.D.; (3) Phil Lam, M.D.; (4) Kim Nguyen, M.D.; (5) Johnny Lopez, R.N.; and (6) Does 1-10. Plaintiff brings this action for a purportedly continuing course of misconduct.

<u>Nerve Pain</u>

Plaintiff has painful nerve pain radiating from his left rear end to his left foot, which has worsened during his commitment at CSH. After years of requesting medical assistance and/or treatment from the defendants, the problem of Plaintiff's nerve pain remains unsolved.

<u>Infections/Boils</u>

In 2008, Plaintiff had several boils on his body. In late 2012, Plaintiff had a boil on the back of his head. In both instances, the nursing staff (John/Jane Does 1 to 10) failed and refused to take a culture. A general antibiotic seemed to cure the infection.

In early December 2012, Plaintiff's right armpit was infected with another boil. Again, the nursing staff (John/Jane Does 1 to 10) failed and refused to take a culture. A general antibiotic seemed to cure the infection.

In late December 2012, another infection and boil affected Plaintiff's right testicle. Nursing staff (John/Jane Does 1 to 10) failed and refused to take a culture. A general antibiotic seemed to cure the infection.

In January 2013, three additional infection-related boils appeared in Plaintiff's right armpit. Again, nursing staff (John/Jane Does 1 to 10) failed to take a culture.

On February 16, 2013, Plaintiff incurred additional infections and the nursing staff (John/Jane Does 1 to 10) failed and refused to take cultures. Within 24 hours, the infection site spread and increased from marble-sized to walnut-sized. Defendant Dr. Kim Nguyen examined the infection site twice, but he failed and refused to take cultures. Instead, Dr. Nguyen opted for no further treatment and told Plaintiff, "Let's wait until Sunday and I will look at it again."

By Sunday, February 18, 2013, the area of infection had grown into the size of approximately a half grapefruit. At that time, Defendant Dr. Sandhu, Chief Physician and Surgeon, looked at the infection and told Plaintiff, "Let's look [at] it tomorrow." Dr. Sandhu failed and refused to order that cultures be taken of the infection and failed and refused to order treatment.

By Monday, February 19, 2013, the area of Plaintiff's infection had more than tripled, with the entirety of Plaintiff's buttocks, groin, scrotum, and testicle areas severely infected. Dr. Nguyen failed and refused to take cultures and have them analyzed. Dr. Nguyen changed the prescription from the ineffective antibiotic and prescribed an injectable antibiotic. Dr. Nguyen stated that the injection regimen would not start until that evening, an additional twelve hours for the infection to spread. During the wait of 12 hours, Plaintiff's infection spread another four inches in every direction. Plaintiff informed Nurse Lopez of the rapid spread of this unknown infection. Nurse Lopez replied that that the doctor would see Plaintiff the following day and refused to notify any senior nurse or physician on duty for emergencies. Defendant Lopez's omissions resulted in an additional 24-hour period for the unknown infection to spread.

On February 20, 2013, at approximately 9:00 a.m., Plaintiff was seen by Dr. Nguyen. Dr. Nguyen assessed Plaintiff, but offered him no treatment. At approximately 4:00 p.m. that same day, Plaintiff was notified by his unit supervisor (Samantha Perryman) to report to the medical assessment unit, Unit MA2, to see Dr. Perlita McGuinness. When Plaintiff reported to Dr. McGuinness, she informed Plaintiff that he would be transported immediately to Twin Cities Hospital in Templeton. At Twin Cities Hospital, Plaintiff was informed that he had a serious case of methicillin-resistant staphylococcus aureas (MRSA) and Fournier gangrene. Plaintiff had over 17 square inches of flesh removed and narrowly avoided death. Plaintiff was informed by Twin Cities' medical personnel that CSH had "dropped the ball." He also was informed that he had suffered unnecessary and significant pain based on defendants' failure and result to diagnose and treat due to cost cutting mandates.

Shoulder Damage/Pain

In 2008, Plaintiff had his shoulder replaced. Since 2011, Plaintiff has suffered from considerable pain in his shoulder area. Plaintiff had been requesting a new referral to Dr. Burrell Smith, who had performed the 2008 surgery, for follow-up and to establish the source of the new pain.

3

Plaintiff's requests have been denied and he has not been provided with follow-up care for his shoulder.

### Neuropathy and Fibromyalgia (General)

Plaintiff was diagnosed with neuropathy and fibromyalgia in 2004. Plaintiff's neuropathy and fibromyalgia has worsened. In 2010, defendants, at the direction of their supervisors, instituted a policy and practice of discontinuing serious and effective pain medication. Plaintiff is informed and believes that the policy and practice was meant to reduce the hospital budget burden by offering inexpensive over-the-counter medications in lieu of prescription medications. Plaintiff was seen by a neurologist and prescribed Triliptol for his neuropathy and fibromyalgia, but suffered extreme serious side effects, such as agitation and depression. Due to the side effects, Plaintiff ceased taking the medication, which remains prescribed. Dr. Nguyen has failed and refused to acknowledge the side effects and has refused to address the issue.

### Neuropathy (Feet)

While a patient at Atascadero State Hospital in 2004, Plaintiff was diagnosed with neuropathy of the feet and prescribed special-order shoes. Upon his transfer from Atascadero in early 2007, Plaintiff informed Defendant Dr. Lam about his special-order shoes and neuropathy. Plaintiff requested replacement of his worn out shoes. Dr. Lam replied, "We don't give out special-order shoes here," and refused to provide Plaintiff with replacement special-order shoes.

Plaintiff later met several CSH patients who had been given special-order shoes by Dr. Lam. Plaintiff believed Dr. Lam was not being honest with Plaintiff, but was following orders to reduce costs to the State by eliminating patient care. When contract specialist Dr. Burrell Smith informed Plaintiff that he had bone spurs in both feet, as well as felicitus and a seismoid bone fracture in his left foot, Dr. Lam denied the existence of Plaintiff's medical history, contradicted Dr. Smith's report and failed and refused to prescribe replacement special-order shoes. After unnecessary pain and suffering, Plaintiff's unit doctor circumvented Dr. Lam and obtained shoes for Plaintiff.

Some years later, after the shoes wore out, CSH informed patients that they must go through Dr. Lam to receive special-order shoes. When Plaintiff asked Dr. Lam for special-order shoes, Dr. Lam refused, exclaiming "You already have two pairs of shoes!" Plaintiff alleges that Dr. Lam

reacted unreasonably as if the shoes used by Plaintiff never wore out. After an additional year without shoes, Plaintiff was issued new shoes. However, the previous denial of shoes exacerbated and compounded Plaintiff's foot injuries. Plaintiff alleges that he has required over $17,000 in additional medical care/hospital visits/trips to Visalia, which could have been prevented by issuing him the special-order shoes at regularly scheduled intervals.

In October 2013, Plaintiff observed another CSH patient on the same housing unit with new special-order shoes. Plaintiff asked the other patient if he had to be shackled and strapped down, then driven by prison guards on a long van ride in order to receive his special-order shoes. The other patient indicated that Dr. Lam called in the order by telephone and he received shoes without being subjected to handcuffs, leg irons, leg chains and long van rides. The other patient also informed Plaintiff that he once had a problem getting special shoes on his arrival at CSH and he had to file a complaint with the Department of Mental Health in Sacramento before Dr. Lam was finally ordered by administrators to give him shoes.

Post-Operative Shoulder Pain

On October 2, 2013, Dr. Nguyen denied Plaintiff access to Dr. Burrell Smith, an orthopedic surgeon. Dr. Nguyen stated that he would refer Plaintiff to the pain clinic for shots in his right shoulder. Plaintiff told Dr. Nguyen that he had been given those shots a few months previously and they were ineffective. Plaintiff cannot now lift his arm above shoulder, which was his condition prior to replacement surgery in 2008. Plaintiff again explained to Dr. Nguyen that Dr. Burrell Smith had instructed that the replacement surgery would last only about ten years and that if Plaintiff had any problems he should have a referral generated so that Dr. Smith could examine Plaintiff when those problems surfaced. The statement regarding referral is contained in Dr. Smith's 2008 consultation/shoulder replacement surgery report. Dr. Nguyen refused to generate the referral to Dr. Smith. Dr. Nguyen stated that he would send Plaintiff to see the CSH pain management specialist for more shots.

Medication Mismanagement

Upon arrival at CSH in early 2007, Plaintiff was experiencing sleeplessness and extreme pain. Various CSH doctors discontinued Plaintiff's sleep mediation and pain medications. As a result of the

5

pain and sleep deprivation, Plaintiff became suicidal. The lack of medical care, along with pain and sleep deprivation, let the unit psychiatrist, Dr. May, to prescribe various psychiatric medications, including Zyprexa, Abilify and Cymbalta. These medications had listed side effects of agitation and some had aggression, belligerent behavior and hostility. Plaintiff began to experience these listed side effects. As time passed, Plaintiff began to experience hostility and agitation in his relationships with peers and CSH staff. The medical and psychiatric staff appeared to be unaware of the dangerous side effects and tended to blame and punish Plaintiff. Plaintiff contends that the negligence and side effects were the direct cause of a severe disruption in Plaintiff's treatment program, preventing him from advancing to Levels 3 and 4 in the CSH treatment program and preventing him from moving forward to the community discharge portion of the treatment program.

In addition, the medications' side effects—agitation, aggression, belligerent behavior—were experienced by Plaintiff. CSH staff, facilitators and the Wellness and Recovery Program treatment team used these side effects as an excuse to hold Plaintiff from advancement in the treatment program. By writing, "[p]atient Rivers is . . . agitated, aggressive, belligerent, and hostile . . . and he therefore is not ready to advance to phases three and four of the treatment program . . .," the CSH defendants, including the Doe defendants, sentenced Plaintiff to a potential life sentence of confinement without the possibility of parole due to the known side effects of the medications they prescribed.

Plaintiff contends that new and largely experimental drugs are often prescribed by doctors in facilities where patients are involuntarily detained, and provide good subjects for the doctors who are urged by the pharmaceutical companies to prescribe those new and experimental drugs. Plaintiff alleges that CSH defendants have been using patients as a medical experiment, testing limits of human endurance to medical infections and the treatments proposed for them.

**III.    Deficiencies of Complaint**

Plaintiff's complaint fails to comply with Federal Rules of Civil Procedure 8 and 18. Plaintiff will be given an opportunity to cure the deficiencies of his complaint. To assist Plaintiff, the Court provides the relevant pleading and legal standards that appear applicable to his claims.

///

6

**A. Legal Standards**

### 1. Federal Rule of Civil Procedure 8

Pursuant to Federal Rule of Civil Procedure 8, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citation omitted). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. at 1974). While factual allegations are accepted as true, legal conclusions are not. *Id.*; *see also Twombly*, 550 U.S. at 556–557.

Plaintiff's complaint is not a short and plain statement of his claims. Rather, Plaintiff's complaint appears to be a narrative regarding his disagreement with his medical treatment during the course of his confinement at CSH. Plaintiff's complaint also includes generalized and conclusory statements lacking supporting facts. If Plaintiff elects to amend his complaint, he must provide a short and plain statement demonstrating that he is entitled to relief.

### 2. Federal Rule of Civil Procedure 18

Plaintiff is raising different claims against different defendants involving different events. Plaintiff may not bring unrelated claims against unrelated parties in a single action. Fed. R. Civ. P. 18(a), 20(a)(2); *Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011); *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). Plaintiff may bring a claim against multiple defendants so long as (1) the claim arises out of the same transaction or occurrence, or series of transactions and occurrences, and (2) there are commons questions of law or fact. Fed. R. Civ. P. 20(a)(2); *Coughlin v. Rogers*, 130 F.3d 1348, 1351 (9th Cir. 1997); *Desert Empire Bank v. Insurance Co. of North America*, 623 F.2d 1371, 1375 (9th Cir. 1980). Only if the defendants are properly joined under Rule 20(a) will the Court review the other claims to determine if they may be joined under Rule 18(a), which permits the joinder of multiple claims against the same party.

Plaintiff may not bring claims against unrelated defendants in this action. For example, Plaintiff may not pursue a claim against Dr. Nguyen arising out of the failure to properly treat his

shoulder pain while simultaneously pursuing a claim against Dr. Lam arising out of the failure to prescribe special-order shoes.

If Plaintiff elects to amend his complaint, Plaintiff must choose which claims he wishes to pursue in this action. If Plaintiff does not do so and his amended complaint sets forth unrelated claims which violate joinder rules, the Court will dismiss the claims it finds to be improperly joined.

### 3. Linkage Requirement

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law] ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution ... shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute plainly requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by Plaintiff. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Rizzo v. Goode*, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976). The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

Here, Plaintiff fails to link Defendant Audrey King to a constitutional violation. Plaintiff does not identify what Defendant King did or did not do that resulted in a violation of his rights.

### 4. Doe Defendants

Plaintiff has named Doe Defendants. "As a general rule, the use of 'John Doe' to identify a defendant is not favored." *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980). Plaintiff is advised that John Doe or Jane Doe defendants (i.e., unknown defendants) cannot be served by the United States Marshal until Plaintiff has identified them as actual individuals and amended his complaint to substitute names for John Doe or Jane Doe.

///

### B. Legal Standards

#### 1. Fourteenth Amendment

As a civil detainee, Plaintiff's right to medical care is protected by the substantive component of the Due Process Clause of the Fourteenth Amendment. *See Youngberg v. Romeo*, 457 U.S. 307, 315, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982). Plaintiff is "entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." *Jones v. Blanas*, 393 F.3d 918, 931 (9th Cir. 2004) (quoting *Youngberg*, 457 U.S. at 321–22). Thus, to avoid liability, Defendants' medical decisions regarding Plaintiff's treatment must be supported by "professional judgment." *Youngberg*, 457 U.S. at 321. A defendant fails to use professional judgment when her decision is "such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that [she] did not base [her] decision on such a judgment." *Id.* at 323.

In determining whether a defendant has met his or her constitutional obligations, decisions made by the appropriate professional are entitled to a presumption of correctness. *Youngberg*, 457 U.S. at 324. "[T]he Constitution only requires that the courts make certain that professional judgment in fact was exercised. It is not appropriate for the courts to specify which of several professionally acceptable choices should have been made." *Id.* at 321. Liability will be imposed only when the medical decision "is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Id.* at 323.

<u>Nerve Pain</u>

Plaintiff does not link any particular defendant to his allegations that he has not received assistance or treatment for his nerve pain.

<u>Infections/Boils</u>

In connection with his infections/boils, Plaintiff has stated a cognizable Fourteenth Amendment claim against John or Jane Does 1 through 10. In each instance dating from 2008 through January 2013, Plaintiff's infections/boils were resolved with general antibiotics without the purported need for cultures and testing. There is no indication that Plaintiff's additional

infection on February 16, 2013, required any different course of treatment at the time he encountered John and Jane Does 1-10.

The Court finds that Plaintiff has stated a cognizable Fourteenth Amendment claim against Defendants Nguyen, Sandhu and Lopez arising in connection with his February 2013 infection. However, Plaintiff's complaint violates the joinder requirements previously discussed. Plaintiff will be given leave to cure this deficiency.

Shoulder Pain/Damage

Plaintiff's allegations regarding post-operative referrals to Dr. Smith are not sufficient to state a cognizable claim. Plaintiff's generalized assertions that he was not given a new referral do not rise to the level of a constitutional claim.

Neuropathy and Fibromyalgia (General)

Plaintiff fails to state a cognizable claim against Dr. Nguyen in connection with his medication for Neuropathy/Fibromyalgia. Plaintiff reports that he stopped taking the prescribed medication of his own accord. Further, Plaintiff attributes his side effects of "agitation" to various medications, not the least of which is his neuropathy medication. There is no indication that Plaintiff requested different medication or that agitation and depression are known side effects of his currently prescribed medication.

Neuropathy (Feet)

Plaintiff fails to state a cognizable Fourteenth Amendment claim against Dr. Nguyen arising out of the failure to prescribe special-order shoes. Plaintiff admits that he has received special-order shoes on various occasions since arriving at CSH. At best, Plaintiff has alleged that Dr. Nguyen disagreed with the specialist regarding the need for special shoes for a period of time. Various and unspecified periods of delay do not rise to the level of a Fourteenth Amendment violation.

Post-Operative Shoulder Pain

Plaintiff fails to state a cognizable Fourteenth Amendment claim arising out of his allegations that Dr. Nguyen failed to refer him to Dr. Smith for shoulder pain. Dr. Nguyen considered Plaintiff's shoulder pain and sent him for pain management, including shots.

Medication Mismanagement

Plaintiff appears to believe that the side effects from his psychiatric medication—agitation, aggression, belligerent behavior and hostility—are the reason he is not advancing in his CSH treatment program. There is no indication that Plaintiff has reported the side effects to any treating physician or psychiatrist and such a physician has rejected Plaintiff's claims.

If Plaintiff seeks to challenge "the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus." *Preiser v. Rodriguez*, 411 U.S. 475, 500, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973). When seeking damages for an allegedly unconstitutional confinement, "a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254." *Heck v. Humphrey*, 512 U.S. 477, 486–87, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). "A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983." *Id.* at 487. The favorable termination rule of *Heck* applies to civil detainees with access to habeas relief. *Huftile v. Miccio–Fonseca*, 410 F.3d 1136, 1139–40 (9th Cir. 2005).

Plaintiff's remaining allegations regarding his belief that CSH has been using patients as medical experiments lack supporting facts and fail to state a cognizable claim.

**2. State Law: Medical Malpractice**

To the extent that Plaintiff seeks to pursue a tort claim for negligence (medical malpractice) under California law, the Government Claims Act requires exhaustion of those claims with the California Victim Compensation and Government Claims Board, and Plaintiff is required to specifically allege compliance in his complaint. *Shirk v. Vista Unified Sch. Dist.*, 42 Cal.4th 201, 208-09 (Cal. 2007); *State v. Superior Court of Kings Cnty. (Bodde)*, 32 Cal.4th 1234, 1239 (Cal. 2004); *Mabe v. San Bernardino Cnty. Dep't of Pub. Soc. Servs.*, 237 F.3d 1101, 1111 (9th Cir. 2001); *Mangold v. California Pub. Utils. Comm'n*, 67 F.3d 1470, 1477 (9th Cir.

11

1995); *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 627 (9th Cir. 1988).  Plaintiff has not alleged compliance with the Government Claims Act.

### IV.   Conclusion and Order

Plaintiff's complaint fails to comply with Federal Rules of Civil Procedure 8 and 18.  As discussed, the Court will grant Plaintiff an opportunity to cure the identified deficiencies.  *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).  Plaintiff may not change the nature of this suit by adding new, unrelated claims in his first amended complaint.  *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

Plaintiff's amended complaint should be brief, Fed. R. Civ. P. 8(a), but it must state what each named defendant did that led to the deprivation of Plaintiff's constitutional rights, *Iqbal*, 556 U.S. at 678-79, 129 S.Ct. at 1948-49.  Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555 (citations omitted).

Finally, Plaintiff is advised that an amended complaint supersedes the original complaint. *Lacey v. Maricopa County*, 693 F.3d 896, 927 (9th Cir. 2012).  Therefore, Plaintiff's amended complaint must be "complete in itself without reference to the prior or superseded pleading." Local Rule 220.

Based on the foregoing, it is HEREBY ORDERED that:

1. Plaintiff's complaint is dismissed with leave to amend;

2. Within thirty (30) days from the date of service of this order, Plaintiff shall file a first amended complaint; and

3. <u>If Plaintiff fails to file a first amended complaint in compliance with this order, this action will be dismissed for failure to obey a court order</u>.

IT IS SO ORDERED.

Dated:   **July 22, 2015**          /s/ *Barbara A. McAuliffe*  
                            UNITED STATES MAGISTRATE JUDGE

12