1

2

3

4

5

6

7

8              **UNITED STATES DISTRICT COURT**

9                    EASTERN DISTRICT OF CALIFORNIA

10

11   STEVE RIVERS,                          Case No. 1:15-cv-00276-LJO-BAM (PC)

12               Plaintiff,                 FINDINGS AND RECOMMENDATIONS
                                            REGARDING CROSS-MOTIONS FOR
13        v.                                SUMMARY JUDGMENT

14   SANDHU, et al,                         (ECF Nos. 34, 41)

15               Defendants.                **FOURTEEN (14) DAY DEADLINE**

16

17   **I.      Introduction**

18          Plaintiff Steve Rivers ("Plaintiff") is a civil detainee proceeding pro se and in forma

19   pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.  This action proceeds on

20   Plaintiff's second amended complaint against Defendants Nguyen, Sandhu, and Lopez for

21   violations of the Fourteenth Amendment in connection with Plaintiff's February 2013 infection.

22   Currently before the Court are the parties' cross-motions for summary judgment.  For the reasons

23   set forth below, the Court recommends that Plaintiff's motion for summary judgment be denied,

24   and Defendants' motion for summary judgment be granted.

25   **II.     Procedural Background**

26          On April 24, 2017, Plaintiff filed a motion for summary judgment as to all Defendants.

27   (ECF No. 34.)  Defendants filed their opposition on June 28, 2017, and filed an amended

28   memorandum of points and authorities in support of their opposition on June 29, 2017.  (ECF

                                            1

Nos. 39, 40.)  Also on June 29, 2017, Defendants filed a cross-motion for summary judgment.[1]

(ECF No. 41.)  Plaintiff opposed the motion on August 31, 2017, (ECF No. 42), and Defendants

filed a reply on September 5, 2017, (ECF No. 43).  Plaintiff filed a rebuttal to Defendants' reply

on September 25, 2017.[2]  (ECF No. 44.)  The motions are deemed submitted.  Local Rule 230(l).

### III.    Legal Standard

Summary judgment is appropriate when the pleadings, disclosure materials, discovery,

and any affidavits provided establish that "there is no genuine dispute as to any material fact and

the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is

one that may affect the outcome of the case under the applicable law. See Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a

reasonable [trier of fact] could return a verdict for the nonmoving party." Id.

The party seeking summary judgment "always bears the initial responsibility of informing

the district court of the basis for its motion, and identifying those portions of the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v.

Catrett, 477 U.S. 317, 323 (1986).  The exact nature of this responsibility, however, varies

depending on whether the issue on which summary judgment is sought is one in which the

movant or the nonmoving party carries the ultimate burden of proof. See Soremekun v. Thrifty

Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007). If the movant will have the burden of proof at

trial, it must "affirmatively demonstrate that no reasonable trier of fact could find other than for

the moving party." Id. (citing Celotex, 477 U.S. at 323). In contrast, if the nonmoving party will

have the burden of proof at trial, "the movant can prevail merely by pointing out that there is an

absence of evidence to support the nonmoving party's case." Id.

---

[1] Concurrent with the motion, Plaintiff was provided with notice of the requirements for opposing a motion for summary judgment.  (ECF No. 41, p. 40.); see Woods v. Carey, 684 F.3d 934 (9th Cir. 2012); Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1988); Klingele v. Eikenberry, 849 F.2d 409, 411–12 (9th Cir. 1988).

[2] Neither the Federal Rules of Civil Procedure nor the Local Rules contemplate the filing of a surreply.  Further, the Court did not request, nor did Plaintiff seek leave to file, a surreply.  Nevertheless, in an abundance of caution, the Court exercised its discretion to consider Plaintiff's surreply in reference to the pending motions for summary judgment, but found nothing that changed the Court's analysis.  Thus, Defendants were not prejudiced by the Court's consideration of Plaintiff's surreply.

1    If the movant satisfies its initial burden, the nonmoving party must go beyond the

2  allegations in its pleadings to "show a genuine issue of material fact by presenting affirmative

3  evidence from which a jury could find in [its] favor." F.T.C. v. Stefanchik, 559 F.3d 924, 929 (9th

4  Cir. 2009) (emphasis omitted).  "[B]ald assertions or a mere scintilla of evidence" will not suffice

5  in this regard. Id. at 929; see also Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475

6  U.S. 574, 586 (1986) ("When the moving party has carried its burden under Rule 56[], its

7  opponent must do more than simply show that there is some metaphysical doubt as to the material

8  facts.") (citation omitted). "Where the record taken as a whole could not lead a rational trier of

9  fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S.

10  at 587 (quoting First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 289 (1968)).

11    In resolving a summary judgment motion, "the court does not make credibility

12  determinations or weigh conflicting evidence." Soremekun, 509 F.3d at 984. Instead, "[t]he

13  evidence of the [nonmoving party] is to be believed, and all justifiable inferences are to be drawn

14  in [its] favor." Anderson, 477 U.S. at 255.  Inferences, however, are not drawn out of the air; the

15  nonmoving party must produce a factual predicate from which the inference may reasonably be

16  drawn. See Richards v. Nielsen Freight Lines, 602 F.Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd,

17  810 F.2d 898 (9th Cir. 1987).

18    In arriving at these findings and recommendations, the Court carefully reviewed and

19  considered all arguments, points and authorities, declarations, exhibits, statements of undisputed

20  facts and responses thereto, if any, objections, and other papers filed by the parties. Omission of

21  reference to an argument, document, paper, or objection is not to be construed to the effect that

22  this Court did not consider the argument, document, paper, or objection. This Court thoroughly

23  reviewed and considered the evidence it deemed admissible, material, and appropriate.

24  **IV.    Discussion**

25    **A.    Evidentiary Objections**

26    Defendants' object to certain of Plaintiff's evidence in support of his Statement of

27  Undisputed Material Facts.  As noted above, not every objection will be addressed by the Court

28  individually, as doing so is neither necessary nor is that the practice of this Court in the summary

3

1  judgment context.  For the sake of clarity and to the extent it is appropriate, certain individual

2  objections have been addressed by the Court below.  Other objections are better dealt with here,

3  in general terms.

4          The hearsay objections are overruled.  Declarations which contain hearsay are admissible

5  for summary judgment purposes if they can be presented in admissible form at trial.  Fonseca v.

6  Sysco Food Servs. of Ariz., Inc., 374 F.3d 840, 846 (9th Cir. 2004).  Furthermore, "[i]f the

7  significance of an out-of-court statement lies in the fact that the statement was made and not in

8  the truth of the matter asserted, then the statement is not hearsay."  Calmat Co. v. U.S. Dep't of

9  Labor, 364 F.3d 1117, 1124 (9th Cir. 2004).  At this stage, the Court did not find the hearsay

10  objections raised by the Defendants to be preclusive of the evidence submitted.

11          Finally, given the Court's duty to determine whether there exists a genuine dispute as to

12  any material fact, objections to evidence as irrelevant are both unnecessary and unhelpful.  See

13  e.g., Carden v. Chenega Sec. & Protections Servs., LLC, No. CIV 2:09-1799 WBS CMK, 2011

14  WL 1807384, at *3 (E.D. Cal. May 10, 2011); Arias v. McHugh, No. CIV 2:09-690 WBS GGH,

15  2010 WL 2511175, at *6 (E.D. Cal. Jun. 17, 2010); Tracchia v. Tilton, No. CIV S-062919 GEB

16  KJM P, 2009 WL 3055222, at *3 (E.D. Cal. Sept. 21, 2009); Burch v. Regents of Univ. of Cal.,

17  433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006).

18          **B.      Undisputed Material Facts ("UMF")**[3]

19          1.      Plaintiff is a 59-year-old resident of DSH-C [CSH].  (Rivers Decl., ¶ 4.)

20          2.      At all relevant times Plaintiff was a civil detainee housed at Coalinga State

21  Hospital ("CSH"), in Coalinga, California.  Plaintiff has never been committed to DSH-C.  (ECF

22  No. 11, Verified Second Amended Complaint ("SAC"), ¶ 6.)

23  ///

24

25  [3] See Plaintiff's Statement of Facts, (ECF No. 34, pp. 21–24), and Defendants' Opposition to Plaintiff's Statement of
   Undisputed Material Facts, (ECF No. 39, pp. 11–14).  As Defendants argue, Plaintiff did not comply with the rules in
26  preparing his opposition to Defendants' motion for summary judgment, including by failing to provide a separate
   statement of undisputed facts from his opposition.  Local Rule 260(a).  As a result, Defendants' statement of
27  undisputed material facts in support of their motion for summary judgment is accepted except where brought into
   dispute by Plaintiff's statement of facts in support of his own motion, or his declaration, signed under penalty of
   perjury.  See Johnson v. Meltzer, 134 F.3d 1393, 1399–1400 (9th Cir. 1998).  Unless otherwise indicated, disputed
28  and immaterial facts are omitted from this statement and relevant objections are overruled.

1    3.    At all relevant times, Defendant Jagsir Sandhu, M.D. was the chief physician and

2    surgeon at CSH.  (SAC, ¶ 8; Sandhu Decl., ¶ 2.)

3    4.    At all relevant times, Defendant Kim Nguyen, M.D. was a physician and surgeon

4    employed by CSH.  (SAC, ¶ 10; Nguyen Decl., ¶ 2.)

5    5.    At all relevant times, Defendant Johnny Lopez, R.N. was a registered nurse at

6    CSH.  (SAC, ¶ 11.)

7    6.    On or about February 16, 2013, plaintiff incurred skin infections (swellings and

8    infectious boils, in addition to the ones he had acquired in 2008, 2012, and early 2013.  (SAC,

9    ¶ 28; Rivers Decl., ¶ 6.)

10   7.    Within 24 hours, plaintiff's infection site spread and increased in size from

11   "marble-sized" to "walnut-sized."  (SAC, ¶ 29; Rivers Decl., ¶ 7.)

12   8.    On February 17, 2013, Plaintiff was seen by Jagsir Sandhu, M.D. for his

13   complaints of a boil in his right buttock area.  (Sandhu Decl., ¶ 5; Ex. 1.)

14   9.    On February 17, 2013, Dr. Sandhu's assessment of Plaintiff's condition was an

15   early stage abscess, less than 1 cm in size.  (Sandhu Decl., ¶ 5; Ex. 1.)

16   10.   During the February 17, 2013 visit, Dr. Sandhu prescribed Bactrim-double

17   strength and Naproxen 500 mg for Plaintiff's condition.  (Sandhu Decl., ¶ 5; Ex. 1.)

18   11.   During the February 17, 2013 visit, Dr. Sandhu instructed Plaintiff to follow up

19   with his primary care physician on Tuesday, February 19, 2013.  (Sandhu Decl., ¶ 5; Ex. 1.)

20   12.   Dr. Nguyen saw Plaintiff once, on February 19, 2013, regarding his complaint of a

21   boil on his right buttock area.  (Nguyen Decl., ¶ 5.)

22   13.   On February 19, 2013, Dr. Nguyen opines that, upon examining Plaintiff, there

23   was area of erythema and tenderness 5cm x 10 cm with induration on his right buttock area.  The

24   diagnosis was cellulitis of the buttock.  Plaintiff was on Bactrim, an oral antibiotic, day #2.  Dr.

25   Nguyen added Rocephin, 1 gram intramuscular twice a day for 7 days, first dose that same day,

26   when available.  Rocephin is a stronger, injectable antibiotic used for severe bacterial infections.

27   (SAC, ¶ 38; Rivers Decl., ¶ 16; ECF No. 39, Defs' Opp'n to Pl's Statement of Undisputed

28   Material Facts, ("Defs' Opp'n Undisputed Facts"), ¶ 14; Nguyen Decl., ¶ 6.)

1          14.      On February 19, 2013, Defendant Johnny Lopez was informed by Plaintiff of the

2     spreading of his infection and Defendant Lopez informed him that he would see the doctor the

3     next day.  (Rivers Depo., 24:5–11; SAC, ¶ 40.)

4          15.      Defendant Lopez was aware that Plaintiff had a scheduled medical appointment

5     the very next morning, on February 20, 2013.  (Rivers Depo., 24:5–11.)

6          16.      At approximately 4:00 p.m. on February 20, 2013, plaintiff's then-Unit supervisor,

7     Samantha Perryman, notified plaintiff to report to the medical assessment unit, Unit MA-2, to see

8     Dr. Perlita McGuinness.  (SAC, ¶ 43; Rivers Decl., ¶ 21.)

9          17.      When plaintiff reported to Dr. Perlita McGuinness, she told plaintiff that plaintiff

10    would be *immediately* transported to Twin Cities Hospital in the city of Templeton, and plaintiff

11    was so transported.  (SAC, ¶ 44; Rivers Decl., ¶ 22.)

12         18.      At Twin Cities Hospital, plaintiff was informed he had a serious case of

13    *methicillin-resistant staphylococcus aureas* (or MRSA, also known as the "flesh-eating disease")

14    and Fournier gangrene.  Plaintiff had to have over 17 square inches of flesh removed, and

15    narrowly avoided death.  (SAC, Exs. A–K; Rivers Decl., ¶ 23.)

16         19.      Dr. Sandhu believes that his treatment of Plaintiff was reasonable under the

17    circumstances, and within the community standard of care exercised by members of his

18    profession under similar circumstances, especially given Plaintiff's prior history of boils and their

19    effective antibiotic treatment.  (Sandhu Decl., ¶ 8.)

20         20.      Based on Dr. Sandhu's review of Plaintiff's medical records, it appears to Dr.

21    Sandhu that Plaintiff received all reasonable and necessary care during that time at CSH to

22    address his condition, and that the treatment provided was consistent with the community

23    standard of care and CSH policies and procedures.  (Sandhu Decl., ¶ 9.)

24         21.      At no time did Dr. Sandhu ever disregard any significant risk of further injury or

25    pain to Plaintiff.  At no time did Dr. Sandhu knowingly or intentionally cause Plaintiff to

26    experience any pain, suffering, or injury of any kind.  (Sandhu Decl., ¶ 10.)

27         22.      Dr. Nguyen believes that his treatment of Plaintiff was reasonable under the

28    circumstances, and within the community standard of care exercised by members of his

1   profession under similar circumstances.  (Nguyen Decl., ¶ 7.)

2          23.    Based on Dr. Nguyen's review of Plaintiff's medical records, it appears to Dr.

3   Nguyen that Plaintiff received all reasonable and necessary care during that time at CSH to

4   address his condition, and that the treatment provided was consistent with the community

5   standard of care and CSH policies and procedures.  (Nguyen Decl., ¶ 8.)

6          24.    At no time did Dr. Nguyen ever disregard any significant risk of further injury or

7   pain to Plaintiff.  At no time did Dr.  Nguyen knowingly or intentionally cause Plaintiff to

8   experience any pain, suffering, or injury of any kind.  (Nguyen Decl., ¶ 9.)

9          **C.     Analysis**

10         The Due Process Clause of the Fourteenth Amendment protects a civil detainee's right to

11  adequate conditions of confinement, including the right to "adequate food, shelter, clothing, and

12  medical care" as well as "reasonably safe conditions of confinement."  See Youngberg v. Romeo,

13  457 U.S. 307, 314–16 (1982).  In determining whether the state has met its constitutional duty to

14  provide reasonably safe conditions, the Court accords the decisions made by the appropriate

15  professional a "presumption of correctness."  Id. at 323; Houghton v. South, 965 F.2d 1532, 1536

16  (9th Cir. 1992).  Thus, the Court's inquiry is limited to "two questions: (1) whether the

17  decisionmaker is a qualified professional entitled to deference, and (2) whether the decision

18  reflects a conscious indifference amounting to gross negligence, so as to demonstrate that the

19  decision was not based upon professional judgment."  Braninburg v. Coalinga State Hosp. (E.D.

20  Cal. Sept. 7, 2012) 2012 WL 3911910 (citing Houghton, 965 F.2d at 1535).  "[T]he Constitution

21  only requires that the courts make certain that professional judgment in fact was exercised.  It is

22  not appropriate for the courts to specify which of several professionally acceptable choices should

23  have been made."  Youngberg, 457 U.S. at 321.

24         In his motion for summary judgment, Plaintiff contends that Defendants failed to assess

25  and treat his infections and boils, thus denying him medical care and subjecting him to

26  unnecessary and wanton pain and suffering.  (ECF No. 34, p. 9.)  Defendants, in turn, argue that

27  Plaintiff was never denied medical treatment, and the treatment Plaintiff received was appropriate

28  and did not constitute a substantial departure from the objective accepted professional judgment

1  standard.  In addition, Defendants argue that they are entitled to qualified immunity because their

2  actions were objectively reasonable.  (ECF No. 40.)

3                              **1.      Fourteenth Amendment**

4          Plaintiff's argument that Defendants Sandhu and Nguyen denied him medical care is

5  unavailing.  The undisputed evidence shows that Defendants Sandhu and Nguyen provided

6  Plaintiff with treatment that was, in their professional judgment, appropriate under the

7  circumstances.  Plaintiff was examined by Defendant Sandhu on February 17, 2013, after which

8  Defendant Sandhu prescribed an antibiotic, Bactrim-double strength, and Naproxen 500 mg to

9  treat Plaintiff's condition.  (UMF Nos. 8–10.)  Defendant Sandhu prescribed Plaintiff a course of

10  antibiotics that had been effective at treating Plaintiff's boils in the past, and it was within his

11  professional judgment to wait several days to determine whether the antibiotics were effective.

12  (UMF Nos. 6, 19.)  On February 19, 2013, Defendant Nguyen also examined Plaintiff, and added

13  Rocephin, a stronger, injectable antibiotic, to begin that same day.  (UMF Nos. 12–13.)

14          Plaintiff further argues that Defendants' failure to take cultures of his infection and have

15  the cultures analyzed at a laboratory to identify the infecting organism constituted a denial of

16  treatment.  However, both Defendants Sandhu and Nguyen testified that in their medical

17  opinions, the lab testing of a culture was not necessary at that time, and the antibiotic treatment

18  provided to Plaintiff would have been the same as that administered.  (Sandhu Decl., ¶ 4; Nguyen

19  Decl., ¶ 4.)  Plaintiff's theory that he should have or would have received different treatment with

20  lab testing of a culture is purely speculative here, where he provides no evidence for a reasonable

21  fact finder to consider other than his own unsupported conjecture.

22          Under Federal Rule of Evidence 701, Plaintiff, a layperson, is not qualified to offer

23  medical opinions or conclusions based on his symptoms or the course of his medical treatment.

24  Plaintiff's opinion that he had an urgent need for treatment or that his outcome would have been

25  more favorable if he received immediate treatment, or was given different medications, is not

26  admissible.  Only an expert witness with specialized knowledge may determine whether

27  Defendants' conduct was within the appropriate standard of care, whether Defendants' actions or

28  failure to act were the cause of any harm, or if delays in Plaintiff's treatment led to further harm.

8

1    With respect to Defendant Lopez, Plaintiff argues only that in response to Plaintiff's

2  complaint regarding the continued spread of his infection, Defendant Lopez responded that

3  Plaintiff would be seen by the doctor the next day.  Defendant Lopez was aware that Plaintiff had

4  an appointment scheduled for the next morning.  (UMF No. 15.)  While it is true that Defendant

5  Lopez could have asked a senior nurse or physician on duty to immediately examine Plaintiff, it

6  was not unreasonable under the circumstances for Defendant Lopez to defer Plaintiff's

7  examination to his already-scheduled appointment the very next morning.  Again, Plaintiff's

8  theory that this delay in his examination would have resulted in different treatment is purely

9  speculative, and unsupported by evidence for a reasonable fact finder to consider.

10    Based on the foregoing, the Court finds that Plaintiff has failed to raise a genuine dispute

11  for trial regarding his claims against Defendants.  There is no evidence to demonstrate that

12  Defendants acted in a manner that was not within accepted professional judgment.  <u>Youngberg</u>,

13  457 U.S. at 323.

14                    **2.      Qualified Immunity**

15    Defendants also assert that the Court should grant summary judgment on the basis of

16  qualified immunity.  However, the Court finds that this argument need not be reached, based

17  upon the above determination regarding the undisputed facts in this case.

18  **V.      Conclusion and Recommendations**

19    For the reasons explained above, IT IS HEREBY RECOMMENDED that:

20    1.  Plaintiff's motion for summary judgment, (ECF No. 34), be denied; and

21    2.  Defendants' motion for summary judgment, (ECF No. 41), be granted.

22

23    These Findings and Recommendations will be submitted to the United States District

24  Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1).  Within

25  **fourteen (14) days** after being served with these Findings and Recommendations, the parties may

26  file written objections with the court.  The document should be captioned "Objections to

27  Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file

28  objections within the specified time may result in the waiver of the "right to challenge the

magistrate's factual findings" on appeal.  <u>Wilkerson v. Wheeler</u>, 772 F.3d 834, 838–39 (9th Cir. 2014) (citing <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **March 19, 2018**                          /s/ *Barbara A. McAuliffe*   _
                                                            UNITED STATES MAGISTRATE JUDGE